**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**August 19, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

DANIEL SUAZO, JR.,

      Petitioner - Appellant,

v.

MR. JACQUEZ, WARDEN OF THE
A.V.C.F. CORRECTIONAL FACILITY,
AND PHILIP J. WEISER, ATTORNEY
GENERAL FOR THE STATE OF
COLORADO,

      Respondents - Appellees.

No. 22-1157
(D.C. No. 1:18-CV-00330-RMR)
(D. Colo.)

_____

**ORDER DENYING A CERTIFICATE OF APPEALABILITY**\*
_____

Before **MORITZ**, **BRISCOE**, and **CARSON**, Circuit Judges.
_____

Petitioner Daniel Suazo, Jr., a Colorado state prisoner appearing pro se,

requests a certificate of appealability ("COA") so that he may appeal the district

court's order dismissing his petition for writ of habeas corpus pursuant to 28 U.S.C.

§ 2254.  Because Suazo has failed to satisfy the standards for issuance of a COA, we

---

\* This order is not binding precedent except under the doctrines of law of the
case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive
value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

deny his request, as well as his motion to proceed in forma pauperis on appeal, and dismiss this matter.

I

A

In 2007, Suazo and a woman named Vanessa Chagolla agreed to rob a drug dealer from whom Chagolla had previously purchased drugs. To carry out the robbery, Suazo and Chagolla went to the drug dealer's home. There, Chagolla knocked on the door while Suazo, armed with a tire iron, hid behind her. When the victim answered the door, Suazo and Chagolla forced their way inside and attacked the victim. Suazo struck the victim with the tire iron, attempted to cut his throat with a knife, and held him while Chagolla struck him with a shovel and placed a plastic bag over his head. Suazo and Chagolla then took the victim's wallet.

Following the attack, the police searched Suazo's residence and recovered the victim's wallet and a knife. Both the wallet and knife contained DNA evidence that was most probably contributed by both the victim and Suazo.

Suazo and Chagolla were charged with a number of offenses stemming from the attack. Chagolla entered into a plea deal and agreed to testify against Suazo. Although Suazo testified in his own defense, the jury convicted him of attempted first-degree murder, first-degree burglary, aggravated robbery, second-degree assault, theft, and several sentence enhancers. The state trial court sentenced Suazo to a total term of imprisonment of 88 years, comprised of a 48-year sentence for attempted first-degree murder, a consecutive 20-year sentence for first-degree burglary, a

2

consecutive 20-year sentence for aggravated robbery, and 10-year concurrent sentences for assault and theft.

Suazo filed a direct appeal. The Colorado Court of Appeals (CCA) affirmed his convictions and sentences in an unpublished decision issued on January 28, 2010. *State v. Suazo*, No. 08CA0187 (Colo. Ct. App. Jan. 28, 2010); *see* ECF 23-4. The Colorado Supreme Court thereafter denied Suazo's petition for writ of certiorari.

Suazo twice sought and was denied state post-conviction relief. Suazo's first effort ended on January 22, 2018, when the Colorado Supreme Court denied his petition for writ of certiorari. Suazo's second effort ended on December 7, 2020, when the Colorado Supreme Court again denied his petition for writ of certiorari.

B

On February 9, 2018, while his second state post-conviction proceeding was still pending in the Colorado state courts, Suazo initiated these federal proceedings by filing a pro se application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court stayed and administratively closed the case until the conclusion of the state court post-conviction proceedings.

On February 11, 2021, the district court reopened the case. Suazo, with the permission of the district court, filed an amended application. Suazo's amended habeas application sought relief based upon the following claims:

1) "Denial of a fair trial before impartial jury due to a denial of challenge for cause of Juror who had law enforcement ties and connections in family and friends and stated That she believed [Suazo] was guilty before and during voir dire and questioning." ECF No. 25 at 4.

3

2) "Denial of a fair trial, the improper question by the Jury, which was not corrected by the Trail [sic] Court and/or objected to by Trail [sic] Counsel." *Id*. at 5.

3) "Fourteenth Amendment, Insufficient evidence to convict of Pre-meditated Attempted First Degree Murder." *Id*. at 6.

4) "Denial of a fair trial/Prosecutorial misconduct, misstatements of law as to the element of 1st Degree Premeditated Murder (Attempted). *Id*. at 7.

5) "Denial of a fair trial. Discovery Violation. Withholding of a critical key report that must be given to the defense prior to trial, showing that the victim was under the influence and doing Cocaine at the time of the offense that was committed against him." *Id*.

6) "Ineffective assistance of Trial Counsel, in violation of [Suazo's] Sixth Amendment of the United States Constitution." *Id*. at 8.

7) "The Colorado Court of Appeals and the Trial Court erred in denying [Suazo's] Direct Appeal in its rulings affecting [his] Due Process and his United States Constitutional Rights and his State Rights." *Id*. at 12.

8) "[Suazo's] sentence is grossly disproportionate and thus violates the protections afforded by the Eighth Amendment to the U.S. Constitution against Cruel and Unusual Punishment." *Id*. at 14.

9) "[Suazo's] Sixth . . . and Fourteenth . . . Amendment rights were violated, ineffective assistance of trial counsel, appellate counsels (2), and trial court failed to investigate [Suazo's] mental and emotional state of mind at time of his crime." *Id*. at 15.

On October 25, 2021, the district court issued an order dismissing part of Claim 7 (concerning the trial court's alleged refusal to allow evidence or testimony regarding firearms in the victim's house) and all of Claim 9 as unexhausted and procedurally defaulted. The order also directed respondent to file an answer addressing the merits of the remaining claims.

On April 14, 2022, the district court, having received respondent's answer, issued an order denying the remaining claims on the merits.

Final judgment in the case was entered on April 12, 2022. Adams filed a timely notice of appeal. He has since filed an application for COA with this court.

4

## II

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). "Federal law requires that he first obtain a COA from a circuit justice or judge." *Id*. (citing 28 U.S.C. § 2253(c)(1)). To obtain a COA, a state prisoner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires the prisoner to "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (alteration in original) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). In other words, the prisoner must show that the district court's resolution of the claims was "debatable or wrong." *Slack*, 529 U.S. at 484. If the prisoner's claims were denied on the basis of a procedural ruling, the prisoner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and . . . whether the district court was correct in its procedural ruling." *Id*.

*The district court's procedural dismissal of two claims*

Here, two of Suazo's claims were dismissed by the district court on the procedural ground that they were unexhausted and procedurally barred. As the district court correctly noted, 28 U.S.C. § 2254(b)(1)(A) provides that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to

5

the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." "Exhaustion," as we have noted, "requires that the claim be fairly presented to the state court, which means that the petitioner has raised the substance of the federal claim in state court." *Grant v. Royal*, 886 F.3d 874, 890 (10th Cir. 2018) (quotation marks omitted). The district court in this case concluded that there was no evidence in the record establishing that the relevant portion of Claim 7 and all of Claim 9 "were fairly presented to the CCA as federal constitutional claims," and it thus concluded those "claims [we]re unexhausted." ECF No. 41 at 10. The district court in turn concluded that those two claims were subject to an anticipatory procedural default because, if Suazo "tried to return to state court now to present these claims in a collateral attack, they would be untimely" in light of the applicable three-year statute of limitations that applies under Colorado state law. *Id*. (citing Colo. Rev. Stat. § 16-5-402(1)). The district court also noted that, "with limited exceptions not applicable here, the Colorado Rules of Criminal Procedure bar [Suazo] from raising a claim in state court that was, or could have been, presented in a prior appeal or postconviction proceeding." *Id*. at 11 (citing Colo. R. Crim. P. 35(c)(3)(VI)).

Suazo, in his application for COA, does not directly address the district court's dismissal of the relevant part of Claim 7 and all of Claim 9. Suazo does, however, make reference to the district court "proceedurally [sic] default[ing] one of his claims," and Suazo argues that "he has and can show 'cause for default' by and through the ineffectiveness of trial counsel and various appellate counsel." App. at 9.

6

The only specificity that Suazo provides in support is his reference to his "post-conviction counsel . . . refus[ing] to argue" a particular claim in his "initial 35(c) post-conviction motion." *Id*. at 10. To the extent this was intended by Suazo as a challenge to the district court's dismissal of part of Claim 7 or all of Claim 9, we conclude he has failed to establish that reasonable jurists would disagree with the district court's procedural ruling on those claims. That is because, in relevant part, there is no constitutional right to counsel in post-conviction proceedings. *E.g.*, *Coronado v. Ward*, 517 F.3d 1212, 1218 (10th Cir. 2008).

*The district court's dismissal of other claims on the merits*

As to the remaining claims alleged in Suazo's amended application, the district court dismissed them on the merits. Suazo, in his application for COA, directly or indirectly refers to six of those claims, i.e., Claims 2, 3, 4, 5, 6, and 8. We therefore proceed to determine whether Suazo is entitled to a COA on any of those claims.[1] As we explain below, we conclude that Suazo has failed to establish his entitlement to a COA on any of these claims.

a) *Claim 2 – denial of fair trial due to improper question by jury*

In Claim 2 of his amended application, Suazo alleged that he was deprived of his constitutional right to a fair trial when a juror posed a question that the trial court, without objection, asked of Suazo while he was on the witness stand, i.e., "How did

---

[1] To the extent that Suazo intended to challenge the district court's dismissal of the remaining two claims, i.e., Claim 1 and the remaining part of Claim 7, we conclude he has failed to establish that reasonable jurists could disagree with the district court's reasons for dismissing those claims.

the DNA get on the spoon/knife?"[2]  ECF No. 25 at 5.  Suazo responded, in part, that

he "d[id]n't know."  ECF No. 53 at 9.  Suazo alleged that this was an improper

question to be posed to him, it should not have been permitted by the trial court, and

his trial counsel was ineffective for failing to object to the question.

The district court noted that the CCA, in the course of Suazo's direct appeal,

reviewed and rejected part of this claim (i.e., the denial of fair trial argument, but not

the ineffective assistance of trial counsel claim[3]) under plain error review.  ECF No.

53 at 9.  In the CCA's view, "[t]he question, although imprecise, was based on a

reasonable inference from the DNA expert's testimony."  *Id*.  The district court

concluded that the CCA's analysis did "not contradict or unreasonably apply binding

Supreme Court precedent."  *Id*. at 10.  The district court also rejected Suazo's

suggestion "that the 'spoon knife' was not the weapon used to commit the crimes,"

concluding that "Suazo fail[ed] to present clear and convincing evidence to rebut the

presumption of correctness under [28 U.S.C.] § 2254(e)(1)."  *Id*.

Suazo, in his application for COA, makes a brief reference to this claim, but he

fails to provide any arguments or evidence that would lead reasonable jurists to

---

[2] According to Suazo, "a silver combination spoon/knife was discovered on top
of a wallet inside of a drug paraphernalia box" that belonged to him.  ECF No. 25 at
5.  Suazo alleges that "[t]he wallet ultimately was found to belong to the victim," and
that "[t]he silver spoon/knife was tested for DNA and the victims [sic] DNA was
found on it (even though the spoon/knife had no connection to the crime and that the
victim stated in his testimony . . . that he had never seen that knife before)."  *Id*.

[3] The district court did not expressly address this portion of Claim 2, but we
conclude, in any event, that this claim does not warrant the issuance of a COA.

conclude that the district court's resolution of the claim was debatable or that the claim is deserving of further review.

   b)  *Claim 3 – sufficiency of evidence to support attempted murder conviction*

   In Claim 3 of his amended application, Suazo alleged that the evidence presented at his trial was constitutionally insufficient to allow the jury to convict him of attempted first degree murder.  The district court, in addressing this claim, began by noting that the CCA considered and rejected this claim on the merits in the course of Suazo's direct appeal.  The CCA concluded, in pertinent part, that "[v]iewing the . . . evidence in the light most favorable to the prosecution," the jury could have reasonably found "that Suazo acted with deliberation and intent" by "arm[ing] himself with a tire iron," "hid[ing] behind his codefendant as she knocked on the victim's door," "str[iking] the victim with the tire iron and attempt[ing] to cut his throat with a knife," and "h[olding] the victim while the co-defendant struck him with a shovel and put a plastic bag over his head." *Id*. at 11.  The district court concluded that the CCA's analysis was not contrary to, or an unreasonable application of, the Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979), which outlines the standard for evaluating a claim challenging the constitutional sufficiency of evidence. *Id*. at 12–13.

   Although Suazo continues to allege in his application for COA that the evidence presented at his trial was insufficient to support the attempted murder conviction, he presents no arguments or evidence that would allow reasonable jurists

9

to conclude that the district court's analysis was debatable or that the claim is deserving of further review.

### c) Claim 4 – prosecutorial misconduct/misstatements of law

In Claim 4 of his amended application, Suazo alleged that "[d]uring closing arguments, the Assistant District Attorney discussed the "after deliberation" element of first degree murder under Colorado law and "analogized it to that of changing lanes during a traffic maneuver." ECF No. 25 at 7. Suazo argued "that this interpretation was improper" and "impermissibly lower[ed] the prosecutions [sic] burden of proof." *Id*. Suazo also alleged that "[t]he D.A. . . . used statements calculated to 'inflame' the passions and prejudices of the jury concerning the evidence of a spoon/knife which was proven not to have been used against the victim, but the D.A. insistently argued to the jury that" it "was the weapon used by [Suazo] to try and cut the victims [sic] throat with." *Id*.

The district court noted that Suazo raised this issue on direct appeal and that the CCA rejected it on the merits. In doing so, the CCA concluded that the prosecutor's analogy to changing lanes was "consistent with the definition of 'after deliberation'" set forth in the Colorado statute defining that term. ECF No. 53 at 14 (citing Colo. Rev. Stat. § 18-3-101(3)). As for the prosecutor's comments about the spoon/knife, the CCA concluded they "were reasonable inferences from the expert testimony" indicating that both Suazo's and the victim's DNA were found on the object. *Id*. The district court concluded there was "no basis for [federal] habeas relief on this claim" because "the CCA's decision turn[ed]," in part, "on the

10

definition of 'deliberation' under Colorado criminal law," and because it was bound to accept the CCA's determination that the prosecutor's comments regarding the spoon/knife "were proper under [Colorado] state law." *Id*. at 15–16. Lastly, the district court concluded that "the prosecutorial misconduct claim fail[ed] when gauged by [the] federal standards" outlined in *Darden v. Wainwright*, 477 U.S. 168 (1986). *Id*. at 16. More specifically, the district court concluded that "[t]he CCA's rejection of Suazo's prosecutorial misconduct claim reasonably applied *Darden*." *Id*. at 16–17.

We conclude that nothing in Suazo's application for COA could remotely persuade reasonable jurists that the district court's resolution of this claim was debatable or that the claim is deserving of further review.

*d) Claim 5 – withholding of evidence that victim was under the influence*

In Claim 5 of his amended habeas application, Suazo alleged that his constitutional right to a fair trial was violated because the prosecution withheld from the defense, prior to trial, evidence showing that the victim was under the influence of cocaine at the time of the offense. According to Suazo, "a Doctor who had treated the victim at the Hospital . . . testified" during the prosecution's case-in-chief that a toxicology screening had been performed on the victim and "had come back positive for drugs, re; Cocaine." ECF No. 25 at 7. Suazo alleged that neither he nor his trial counsel "had prior knowledge of this," and that his trial counsel unsuccessfully moved for a new trial on this ground (the trial court found that the prosecution had no prior knowledge of the toxicology report either). *Id*. Suazo further alleged that

11

"[h]ad this critical report been properly disclosed" prior to trial, "defense counsel could have formulated her case around this issue or even sought out some kind of mitigating circumstances that could have helped [him] or aided in his defense." *Id*. at 8.

The district court noted that on direct appeal the CCA considered the issue and concluded that the trial court did not abuse its discretion in denying Suazo's motion for a new trial. In support, the CCA concluded that "[n]o discovery violation occurred because the prosecution did not know that the documents existed," "Suazo did not seek a continuance," and "[t]he trial court's curative instruction was sufficient to overcome any prejudice to Suazo." ECF No. 53 at 19. The district court in turn concluded that the claim failed to provide "[a] basis for [federal] habeas relief." *Id*. The district court noted that the CCA's findings were "supported by the state-court record" and "Suazo d[id] not rebut the presumption of correctness [afforded to those findings] with clear and convincing evidence of his own." *Id*. at 19–20 (citing 28 U.S.C. § 2254(e)(1)). The district court further concluded that "Suazo fail[ed] to establish a *Brady* violation because the state-court record confirm[ed] that the prosecution never knew about or possessed the toxicology report."[4] *Id*. at 20. "Moreover," the district court noted, "the CCA reasonably applied the Supreme Court's *Brady* caselaw to conclude that the report was immaterial to the outcome of Suazo's trial." *Id*.

---

[4] *See Brady v. Maryland*, 373 U.S. 83 (1963).

After reviewing Suazo's application for COA, we conclude that reasonable jurists could not debate the district court's resolution of this claim, nor would they find the claim deserving of further review.

e) *Claim 6 – ineffective assistance of trial counsel*

In Claim 6 of his amended habeas application, Suazo alleged that his trial counsel was ineffective in a number of respects.  To begin with, Suazo alleged that "multiple knives" were found "throughout the home of the victim" that "were not tested for DNA evidence," and he in turn alleged that his trial counsel was ineffective for failing to seek DNA testing of those knives and the spoon/knife that was seized from his own home.  Suazo also alleged that his trial counsel should have sought testing of the plastic bags that were placed over the victim's head in order to determine whether the victim had actually chewed through them as he had claimed at trial to have done.  Lastly, Suazo alleged that his trial counsel was ineffective for failing to advise him he could enter an *Alford* plea rather than going to trial.

The district court reviewed the CCA's analysis of these claims and concluded that there was no basis for granting federal habeas relief on the basis of any of these claims.  First, the district court noted that the CCA determined, in the context of reviewing one of Suazo's motions for post-conviction relief, that Suazo's trial counsel "made a strategic decision not to test the knives in the victim's home, and that," in any event, "no prejudice to Suazo had been shown under *Strickland*."[5]  ECF

_____

[5] *See Strickland v. Washington*, 466 U.S. 668 (1984).

No. 53 at 23.  Notably, the CCA stated that it "fail[ed] to perceive how a defense expert in this area could have provided significant assistance" to Souza.  *Id*.  The district court concluded that "[t]he CCA's decision to deny this ineffective assistance of counsel claim was not contrary to, or an unreasonable application of, clearly established federal law under § 2254(d)(1)," and that "Suazo fail[ed] to rebut the presumption that the state-court's factual findings were correct."  *Id*. at 25.

Next, the district court considered Suazo's claim that his counsel should have sought testing of the plastic bags placed on the victim's head.  The district court noted that the CCA considered and rejected this claim on the merits.  Specifically, the CCA concluded that Suazo "failed to demonstrate that any further testing [of the plastic bags] would have produced sufficient evidence to likely lead to a different outcome in his trial," and it therefore rejected his claim of ineffective assistance.  *Id*. at 26.  The district court concluded that the CCA "reasonably applied *Strickland*" in rejecting Suazo's claim.  *Id*.  The district court also noted that Suazo failed to explain in his application "what testing the bag would have revealed, how it would have added to his defense, or why there was a reasonable probability that the outcome at trial would have been different."  *Id*. at 26–27.

Finally, the district court considered and rejected Suazo's claim that his trial counsel was ineffective for failing to advise him to enter an *Alford* plea.  The district court noted that the CCA, in the course of denying Suazo's second motion for state post-conviction relief, denied this claim on the merits.  The CCA noted, in pertinent part, that "the record indicate[d] that trial counsel discussed the prosecution's plea

14

offer with Suazo, but he wasn't interested in it" and in fact "rejected the plea offer for two reasons: first, the offer required him to plead guilty to a class 2 felony, and second, it required a stipulated sentence of at least twenty years in the custody of the [Colorado Department of Corrections]." *Id*. at 28. The CCA further noted that the state trial court, in denying Suazo's second motion for state post-conviction relief, "implicitly discredited Suazo's testimony that he would have accepted the plea offer if he had known he could enter an *Alford* plea because" entering such a plea "would have required a guilty plea to a class 2 felony and a stipulated sentence of twenty years in the custody of the DOC." *Id*. The district court concluded that "[t]he CCA's decision was not contrary to, or an unreasonable application of, *Strickland*." *Id*. The district court noted that "[t]he record lack[ed] any evidence that Suazo was ever offered an *Alford* plea, or that the prosecution would have agreed to it." *Id*. "On top of that," the district court noted, "the record ma[de] clear that Suazo failed to show prejudice because," regardless of the type of plea, "he refused to plead guilty to a stipulated 20-year sentence." *Id*.

Turning now to Suazo's application for a COA, we conclude he has failed to establish that reasonable jurists could debate the district court's conclusions regarding any of these ineffective assistance claims.

f) *Claim 8 – proportionality of Suazo's sentences*

In Claim 8, Suazo alleged that his cumulative sentence of 88 years "is grossly disproportionate and thus violates the protections afforded by the Eighth Amendment to the U.S. Constitution." ECF No. 25 at 14. Suazo also alleged that "in 2016, the

Colorado General Assembly amended Colorado's Crime of Violence Statute . . . to allow that the crime of <u>Aggravated Robbery no longer mandates a Consecutive sentence</u>." *Id*. (emphasis and capitalization in original). In addition, Suazo asserted that Colorado law "now requires that the complicator (Applicant) must have had the intent to commit the underlying offense actually committed by the principal." *Id*. He argues that, in light of "these changed legal standards," his cumulative sentence is "grossly disproportionate" and should be vacated and his case remanded to the state trial court for resentencing. *Id*.

The district court noted that the CCA considered and rejected Suazo's proportionality argument. ECF No. 53 at 29. In doing so, the CCA stated, in pertinent part:

> The postconviction [district] court conducted an abbreviated proportionality review, correctly noting that attempted first degree murder, aggravated robbery, and burglary are per se grave and serious crimes. The court then recited the facts of the case and concluded that the harm caused or threatened here [was] significant, the crimes involved violence, and they were crimes of significant magnitude.
>
> We agree with the postconviction court's determinations. Defendant barged into the victim's house, hit the victim several times with a tire iron, wrestled with him, put a knife to his throat, and tied him to a chair. A plastic bag or bags were placed over the victim's head, limiting the victim's ability to breathe. Defendant and his codefendant stole $1300 and caused multiple physical injuries to the victim, including lacerations, traumatic brain injury, and a hematoma. Although a physician testified that the victim did not suffer serious bodily injury, there was evidence to the contrary, and the jury found that he did. Considered individually or collectively, the harshness of the penalty imposed for each crime is proportionate to the magnitude and gravity of the crimes committed.

16

> Accordingly, an extended proportionality review is not required here, and we conclude that defendant's sentences are proportionate.

*Id*. at 30.  The district court concluded that, "[m]easured against [applicable] Supreme Court cases, the CCA was not unreasonable to reject Suazo's Eighth Amendment proportionality challenge to his sentences totaling 88 years."  *Id*. at 32.  In other words, the district court explained, "when considering Suazo's offenses, no part of the CCA's decision rejecting this claim falls so far outside the boundaries of rational disagreement that the Court could brand it unreasonable under [28 U.S.C.] § 2254(d)(1)."  *Id*.

As for Suazo's arguments in his amended habeas application regarding post-conviction changes to Colorado law, the district court noted that such changes in state law "do[] not serve as a basis for federal habeas relief."  Id. at 29 n.5.  Although the district court did not say so in its decision, it appears that Suazo never presented these same arguments to the CCA.

Turning to Suazo's application for COA, we conclude he has failed to establish his entitlement to a COA on any of these arguments.  More specifically, he has failed to establish that reasonable jurists could debate the district court's resolution of those arguments.

17

IV

The application for COA and the motion to proceed in forma pauperis on appeal are DENIED and the matter is DISMISSED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge